CHANDLER, J.,
for the Court.
¶ 1. This is the appeal of a $1,500,000[1] jury verdict in favor of Paul Marshall against Medicomp, Inc. rendered in the Circuit Court of Copiah County. Initially, Marshall filed suit against Hardy Wilson Memorial Hospital and Dr. Dale Williams seeking damages for injuries he suffered as a result of the alleged negligent treatment of burns to his right leg. More than four years later Marshall filed a motion to amend his complaint seeking to add Medi-eomp as a new party to the suit. The circuit court granted Marshall’s motion and held that the amended pleading would relate back to the original complaint. The amended complaint was filed the same day adding Medicomp as a party and dismissing Hardy Wilson. Medicomp denied all liability and subsequently moved for summary judgment on three separate occasions arguing that the statute of limitations had expired. The motions were all denied and a trial on the matter took place. At the close of Marshall’s evidence, Dr. Williams’s motion for a directed verdict was granted. Medicomp’s motion for a directed verdict was denied. Medi-comp’s request for a peremptory instruction was also denied. After the jury verdict was rendered, Medicomp moved for a judgment notwithstanding the verdict, mistrial, new trial, and an investigation into alleged juror misconduct or in the alternative, a remittitur. All of Medicomp’s post trial motions were denied and this appeal followed. Marshall cross-appeals the circuit court’s directed verdict in favor of Dr. Dale Williams.
FACTS
¶ 2. On January 31, 1995, Marshall left his residence in Hazlehurst, Mississippi and traveled to Birmingham, Alabama to get his monthly disability check which was still being sent to his former mailing address in Birmingham. The trip required an overnight stay in Birmingham and Marshall had come prepared to spend the night at his former residence. He had also come prepared to build a fire in the fireplace because the residence had no gas or electricity. After nightfall, a fire was begun in the fireplace; however, Marshall added gasoline to the fire and spillage from the gasoline caused his clothing to ignite and resulted in the injuries that are the subject of this appeal.
¶ 3. Marshall drove himself to the emergency room at Baptist Princeton Hospital in Birmingham where he received treatment for a fairly significant burn to his right leg. The wound was cleaned and excised of any dead or contaminated tissue in a process commonly known as debridement. A topical burn cream and dressing was applied to the wound and pain medication and a tetanus shot were administered to Marshall. Hospital records indicate that Marshall was diagnosed with second degree burns to his leg. He was instructed to return in two days to be reexamined and to leave the dressing on the wound until that time.
¶ 4. The following day, February 1,1995, Marshall drove back to his residence in Hazlehurst, arriving there at about 4:00 p.m. Sometime following his arrival home Marshall’s wife removed the dressing from the wound. By 9:00 p.m. the wound had become very painful and its appearance caused enough concern that an ambulance was called to transport Marshall to the emergency room at Hardy Wilson Hospital in Hazlehurst. Marshall was examined by the on-call emergency room physician, Dr. *196 Williams, who diagnosed him with second degree burns. Burn cream and a clean dressing was applied to Marshall’s wounds. Hospital records indicate that Marshall was instructed to return at 8:00 a.m. the next day, February 2, 1995, for a whirlpool bath. He was also advised to see a local physician, Dr. Walker, on February 3, 1995. Written instructions to apply burn cream to the wound twice a day and to keep the wound wrapped until he had a chance to see Dr. Walker were also provided.
¶ 5. What happened the next day, February 2, 2003, was a matter of considerable controversy at the trial. Marshall testified that he showed up as scheduled at the emergency room at Hardy Wilson for his whirlpool bath and was told to go down the hall a few doors to the physical therapy department. He testified that when he arrived there he was told that there was no therapist on duty to give him the bath and that there would not be a therapist there that day. He testified that an appointment was then made for him to come in the next day.
¶ 6. Medicomp employees testified that Marshall called the physical therapy department on February 2, 2003, and an appointment was made over the telephone for him to come in the following day, February 3, 2003. All of the witnesses agreed that Marshall came in as scheduled on February 3, 2003, but that, once again, there was no one available to give him a whirlpool bath.
¶ 7. Marshall testified that he became upset and frustrated when he learned that he would not be able to receive his bath as scheduled. He stated that he was in a lot of pain from his wound and begged to be allowed to see the emergency room doctor or to be given transportation to a hospital in Jackson. He said his pleas were ignored and he was simply told that he would have to leave because there was no one to treat him.
¶ 8. To the contrary, Medicomp and Hardy Wilson personnel testified that Marshall was given the option of seeing the emergency room doctor and an offer was made to drive him a short distance away to Dr. Walker’s office where he already had a 4:00 p.m. appointment for that same day; but, Marshall refused all offers of help. Instead, he became more and more belligerent to the point that law enforcement had to be summoned to remove him from the premises.
¶ 9. Marshall’s wife testified that she learned of the commotion at the hospital and went there. She testified that she calmed her husband down and convinced him to go with her to Dr. Walker’s office. When they arrived at Dr. Walker’s office, Marshall was refused treatment because Mrs. Marshall had a past due account with the doctor.
¶ 10. Mrs. Marshall then drove her husband to Kings Daughters Hospital in Brookhaven where he was immediately admitted and remained for seventeen days for treatment of second and third degree burns to his leg, some of which had become infected. Marshall’s lawsuit sought compensation for the actions and inactions of Hardy Wilson, Dr. Dale Williams and Medicomp in their treatment of his injury.
¶ 11. Medicomp submits that the trial court erred in granting Marshall’s motion to amend his complaint and in denying Medicomp’s numerous motions for dismissal, when the limitation period applicable to Marshall’s claims had obviously expired. Additionally, Medicomp alleges that the trial court erred in permitting Marshall to argue that the statute of limitations was tolled based upon the doctrine of fraudulent concealment, when Marshall never pleaded or proved the necessary elements *197 of fraudulent concealment. Finding merit in Medicomp’s arguments, this Court reverses and renders.
ANALYSIS

1. statute of limitations

¶ 12. Marshall sued on various legal theories including violation of the Emergency Medical Treatment and Labor Act (EMTLA), negligence and breach of contract. When Marshall rested his case in chief Medieomp made a motion for a directed verdict challenging the sufficiency of the evidence on Marshall’s various theories. Counsel for Marshall, Mr. Rhodes, responded that, “In the pretrial order, he is only pursuing ... the negligence claim against Medieomp.” The trial court then inquired as follows:
THE COURT: So apparently there’s a contract claim; is that right?
MR. RHODES: Your Honor, this will be one as a matter of law. We’re just claiming he’s a beneficiary under this contract that Medieomp had with Hardy Wilson where Medieomp disagreed [sic] to provide physical therapy for Hardy Wilson. He’s not a signatore [sic] to that contract. That was on the basis of that.
THE COURT: As far as any claim where the—
MR. RHODES: EMTLA?
THE COURT: Yeah.
MR. RHODES: We’re not asserting those claims, Your Honor. We did not put them forward in the pretrial order.
THE COURT: All right, sir.
MR. FOSTER [counsel for Medieomp]: May I briefly respond? With respect to the breach of contract claim, there’s been no evidence that the contract was breached, so Medieomp deserves a directed verdict on that claim.
THE COURT: He said he’s not pursuing that.
MR. FOSTER: Are you not bringing the breach of contract in — ■
MR. RHODES: No.
¶ 13. As is plainly evident from the preceding excerpt, negligence was the only cause of action Marshall was advancing at the time of trial. A cause of action in negligence is governed by the two-year statute of limitations of Mississippi Code Annotated section 15-1-36 (Rev.2003). That statute provides that suit must be brought “within two years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.” The alleged omission was failure to have staff available. That information was known on the day or days that it occurred; thus, the statute of limitations would have expired no later than February 3,1997.
¶ 14. Notwithstanding his counsel’s declarations to the contrary to the trial court, Marshall attempts to resurrect his breach of contract cause of action in this appeal. Apparently conceding that the statute of limitations on that cause of action had expired prior to his suing Medieomp, he argues to this Court that the statute of limitations on that action was tolled by Medicomp’s alleged fraudulent concealment of Medicomp’s breach of its contract with Hardy Wilson to have a licensed physical therapist on duty on February 2 and 3,1995.

2. fraudulent concealment

¶ 15. The supreme court ease of Robinson v. Cobb, 763 So.2d 883, 887 (Miss.2000), holds that in order for a court to find fraudulent concealment “there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.” Marshall must first prove that *198 Medicomp “engaged in affirmative acts of concealment” and that he acted with due diligence in attempting to discover Medi-comp’s role, but was unable to do so. Id. In this regard, it must first be noted that Marshall did not plead fraudulent concealment with sufficient particularity in either his motion for leave to amend or in his amended complaint. Marshall’s motion for leave to amend states:
The Plaintiff, Paul Marshall, recently discovered from defendant, Hardy Wilson Memorial Hospital, that Hardy Wilson Memorial Hospital had a contract with Medicomp, Inc., to provide services which form the basis of this lawsuit, and plaintiff desires to make Medicomp, Inc. a party to this action.
Justice requires that leave to amend be granted in the instant case. Since pertinent facts concerning liability were recently discovered by plaintiff, and those facts were fraudulently concealed from him for several years, he should be permitted to pursue those facts.
¶ 16. Marshall only makes the allegation that pertinent facts were fraudulently concealed. He fails entirely to identify any act or conduct of an affirmative nature on the part of Medicomp that was designed to prevent and which did prevent his discovery of the claim. Equally deficient are the fraudulent concealment allegations in his amended complaint which merely states:
Defendants, Medicomp, Inc. and Hardy Wilson, fraudulently concealed the cause of action plaintiff, Paul Marshall, had against them for their failure and refusal to give him a whirlpool bath on February 1, 2, and 3,1995.
Plaintiff, Paul Marshall, could not have discovered defendants, Medicomp, Inc. and Hardy Wilson, fraudulent concealment, with reasonable diligence before February 8, 1999 when the attorney for these defendants wrote plaintiffs counsel a letter advising of the contract between these defendants to provide a licensed physical therapist to administer whirlpool baths for Hardy Wilson.
¶ 17. There was simply no basis on which the trial court could make a finding of fraudulent concealment from Marshall’s pleadings that would justify the tolling of the statute of limitations. Additionally, there is nothing in the record to support a charge of fraudulent concealment.
¶ 18. The object of a fraudulent concealment claim is concealment of the cause of the injury which in turn conceals the identity of the causing agent. In order for this Court to affirm the ruling of the trial court in granting the motion to amend on the basis that Medicomp’s fraudulent concealment tolled the running of the statute of limitations, this Court must find that: (1) Medicomp knew that it had caused Marshall’s injuries; (2) engaged in affirmative acts to conceal its role in causing his injury; and, (3) Marshall acted with due diligence in attempting to discover the cause of his injuries, but was unable to do so because of Medicomp’s affirmative acts of concealment. The facts do not support such a finding.
¶ 19. With immense respect for the position taken by the dissenting opinion, it appears that this opinion’s holding has been misconstrued. The dissenting opinion states that “the trial court did not err in ordering the amended complaint to relate back to the date of filing of the original complaint.” This opinion holds that the trial court erred in granting the motion to amend the complaint, as a result, the question of whether or not the amended complaint would relate back became a moot issue.
¶ 20. Before arriving at the conclusion that the trial court erred, we examined the *199 record to determine the basis upon which the trial court made its decision to grant the motion to amend the complaint to add a new party and new factual allegations more than eighteen months after the filing of the original lawsuit and more than four years after the cause of action arose. The trial court’s order which granted the motion provided no guidance as it merely granted the motion and held that the amended complaint “shall relate back to the date of the original filing.” We were therefore left to examine the motion itself and the amended complaint.
¶ 21. The motion to amend, unlike the valiant and well-reasoned argument set forth in the dissenting opinion, did not argue Mississippi Rule of Civil Procedure 15(c), but argued instead that Marshall had only recently learned of a contract between Hardy Wilson and Medicomp in which Medicomp agreed to provide services which formed the basis of the lawsuit and other “pertinent facts concerning liability.” Marshall claimed that he had only recently learned of these matters because they had been “fraudulently concealed from him for several years.” The allegations of fraudulent concealment were mirrored in the amended complaint that was later filed.
¶ 22. Without more from the trial court we must conclude that in granting the motion to amend, the court adopted the reasons set forth in the motion. As explained in other portions of this opinion, that was error. It appears obvious that the fraudulent concealment argument was advanced as a “savings” option because without it the statute of limitations on negligence actions would have barred any action against Medicomp at that time.
¶23. It would be patently unfair for this Court to adopt the reasoning of the dissenting opinion which advances an argument on behalf of a party that never advanced the argument itself, and which, by implication, the opposing party never had an opportunity to address, and to then, as the dissent suggests, rule that the opposing party cannot now assert a defense to the argument for the first time on appeal.
¶ 24. Medicomp makes other claims of error on the part of the trial court having to do with jury misconduct, remittitur, whether the jury award was exorbitant, and the denial of various post trial motions; however, the decision by this Court to reverse and. render the jury verdict nullifies those issues.
Cross-Appeal

1. directed verdict in favor of Dr. Williams

¶25. In his cross-appeal, Marshall contends that granting Dr. Williams’s motion for a directed verdict constituted reversible error. This Court conducts a de novo review of motions for directed verdict, and considers the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence presented at trial. Houston v. York, 755 So.2d 495 (¶ 12) (Miss.Ct.App.1999). A directed verdict should not be granted unless, on the basis of those facts and inferences, no question of fact remains on which reasonable minds could differ. Otherwise, the matter should be submitted to the jury. Id.
¶ 26. Marshall argues that the question of whether Dr. Williams was negligent in not referring him to a surgeon or burn center following his visit to the emergency room at Hardy Wilson was a question of fact that the jury should have been allowed to answer. Marshall’s medical expert, Dr. Moses Young, testified on direct examination that he did not personally examine Marshall’s wound; but, that he reviewed *200 Marshall’s medical records from Hardy Wilson and Kings Daughters Hospital and came to the conclusion that “based upon the degree of burn that he had, I think he should have immediately been referred to either ... a surgeon or burn unit.”
¶ 27. On cross-examination, Dr. Young responded as follows:
Q. Now, the criteria for transfer is what this section is talking about, right? Now, the first paragraph says, “The American Burn Association has identified the following types of burns, injuries that usually require referrals to a burn center.” Look at number 2. Well, first of all, look at number 1. It says, “Partial thickness and full thickness burns greater than 10 percent of the total body surface area in patients under 10 and over 50,” right?
A. Right.
Q. Mr. Marshall doesn’t fall in that category, does he?
A. Not according to the age.
Q. Mr. Marshall falls into the next category doesn’t he? Partial thickness, which is second degree burns you were talking about, right?
A. Right.
Q. And full thickness, which is the third degree burns. So in other words, second degree and third degree burns greater than 20 percent of the body surface in other age groups, which would include Mr. Marshall, correct?
A. Correct.
Q. So according to the American Burn Association’s criteria for people you should refer to burn centers, Mr. Marshall didn’t need to be referred to a burn center, did he?
A. Not according to this.
Q. Not according to the ATLS manual; is that correct?
A. Right. Correct. According to the manual.
Q. This is the book that you were certified under in 1992, right?
A. Right.
Q. And this is the book that you follow in your treatment in emergency rooms, too, correct?
A. Correct.
¶ 28. What is readily apparent from the foregoing excerpt is that Marshall’s own expert agreed that based on Dr. Williams’s diagnosis at the time he saw Marshall in the emergency room there was no indication that Marshall needed to be transferred to a surgeon or burn center and the treatment he rendered was appropriate and within the standard of care. In accordance with this Court’s standard of review, on the basis of those facts and inferences, no question of fact remained on which reasonable minds could differ on the issue; therefore, a directed verdict was proper.
¶ 29. Marshall further argues that, in granting the motion for directed verdict, the trial court invaded the province of the jury by deciding that Marshall’s expert witness had recanted his testimony when, to the contrary, the expert witness testified on re-direct examination that he had not recanted his testimony. This Court notes that Marshall’s expert, Dr. Young, had based his opinion that Dr. Williams should have immediately transferred Marshall to a surgeon or burn center on the assumption that, at the time Marshall was seen by Dr. Williams, Marshall had a “deep partial thickness” second degree burn which all authorities agreed would have required transfer. However, when cross-examined on this point Dr. Young-testified as follows:
Q. And what that means, as I understand it is, when you get bacteria in a wound — if you’ve got a second degree wound as it was diagnosed by both of *201 these physicians here, it can rapidly convert to a third degree wound, correct?
A. Correct.
* * *
Q. Okay, sir. Isn’t the most likely series of events in this case the following: Mr. Marshall sustained second degree burns and was treated at the hospital in Birmingham, diagnosed second degree burns, at Hardy Wilson was diagnosed by Dr. Williams as second degree burns, he had second degree burns. Those burns sometime after he left Dr. Williams’ care became infected and rapidly progressed to the level of the third degree that was found at King’s Daughters Hospital. Isn’t that the most likely case situation looking at all the records and all these medical texts and your education and training?
A. That’s a strong possibility.
Q. It’s more likely than not that those second degree burns got infected and became third degree burns than it is that two board certified ER physicians are going to misdiagnose it and call it second when it’s really third, right?
A. Correct.
Q. And if these were second degree burns, which had not converted to third degree burns because there wasn’t any infection when Dr. Williams treated him — if these were second degree burns when Dr. Williams treated him, then Dr. Williams treated him appropriately and complied with the standard of care, didn’t he?
A. Yes.
Q. And if that is the case, then Mr.— Dr. Williams didn’t do anything wrong, did he, sir?
A. Not according to that.
Q. Not according to what?
A. Not according to his care.
¶ 30. When this Court applies its appellate standard of review on the granting of a directed verdict to this testimonial evidence and considers it in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence, it is left with the firm conviction that the directed verdict was properly granted. The trial court is affirmed on this issue.
¶ 31. THE JUDGMENT OF THE CO-PIAH COUNTY CIRCUIT COURT IS REVERSED AND RENDERED ON THE DIRECT APPEAL AND IS AFFIRMED ON THE CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEE/CROSS-APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, LEE, MYERS AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, J.

. The circuit court judgment filed among the clerk’s papers states that the amount of the verdict was "One Million Two Hundred Thousand Dollars $1,200,000.00.” This Court’s disposition of the appeal renders the discrepancy moot.